IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DUDLEY ALVIN DAUPHIN,<br>Reg. No. 59816-509,<br><br>Petitioner,<br><br>v.<br><br>RAY COLEMAN,<br><br>Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO. 2:26-CV-400-WKW<br>[WO] |

**MEMORANDUM OPINION AND ORDER**

## I. INTRODUCTION

Petitioner Dudley Dauphin, an inmate in the custody of the Federal Bureau of Prisons (BOP), filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241, alleging a violation of his procedural due process rights in connection with sanctions he received for possessing a cell phone on three different occasions. He challenges three BOP disciplinary actions that resulted in the forfeiture of 123 days of good-conduct time and further alleges that he did not timely receive the corresponding Discipline Hearing Officer reports.

At the time of filing, Petitioner was incarcerated at the Federal Prison Camp in Montgomery, Alabama ("FPC-Montgomery"), where he remains in custody today. Respondent, who is named in his official capacity as the warden of FPC-

Montgomery,[1] filed an answer to the § 2241 amended petition. (Doc. # 11.) He requests dismissal of Petitioner's petition partially for failure to exhaust administrative remedies and, alternatively, for failure to allege a violation of his due process rights. Petitioner was directed to file a reply (Doc. # 12) but did not do so.

For the reasons set forth below, the petition will be dismissed with prejudice because Petitioner has failed to demonstrate a due process violation. Additionally, an evidentiary hearing is not necessary. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts*[2] [hereinafter *Rules Governing § 2254 Cases*].

## II. JURISDICTION

A federal prisoner may obtain habeas relief by showing that he is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A § 2241 petitioner who "seeks to challenge his present physical custody within the United States . . . should name his warden as respondent and file the petition in the district of confinement." *Rumsfeld v. Padilla*, 542 U.S. 426, 447 (2004); *see also Fernandez v. United States*, 941 F.2d 1488, 1495 (11th Cir. 1991) ("Section 2241 petitions may be brought only in the district court for the district in

[1] Because the warden has changed since the petition was filed, the electronic docket sheet will be updated to substitute the current acting warden, Ray Coleman, as Respondent.

[2] The *Rules Governing § 2254 Cases* apply to petitions under 28 U.S.C. § 2241. *See* Rule 1(b), *Rules Governing § 2254 Cases* (providing that the *Rules* apply to habeas corpus petitions filed under provisions other than § 2254).

which the inmate is incarcerated.”). These requirements are satisfied because Petitioner alleges he is in custody in violation of the United States Constitution or laws of the United States, names his warden as the respondent, and filed this § 2241 petition in the district where he is confined.

## III. BACKGROUND

The material facts necessary to resolve this petition are undisputed. Petitioner is serving a 120-month federal sentence (Doc. # 1 at 2), with a projected release date of May 23, 2030 (Doc. # 11-3 at 3).[3] Between April 2024 and April 2025, he received three incident reports that collectively resulted in the forfeiture of 123 days of good-conduct time (GCT). The incidents and resulting disciplinary outcomes are summarized below. Petitioner's claims are set forth following that summary.

### A. Disciplinary Incidents

**First Disciplinary Incident (Incident Report # 3925798).** On April 19, 2024, two cell phones were found in Petitioner's locker at the institution where he was confined (FCC Coleman), and he was charged with the infraction, “Possession of a Hazardous Tool, Code 108.” (Doc. # 11-2 at 3.) He received the incident report on April 20, 2024, and a hearing occurred on April 25, 2024, before Discipline

[3] References to “Doc(s).” are to the document numbers of the pleadings and other materials in the court's electronic record, as compiled and designated on the docket sheet by the Clerk of Court. Pinpoint citations are to the page of the electronically filed document in the court's CM/ECF filing system.

Hearing Officer (DHO) Wendy White. (*See* Doc. # 11-2 at 3, 10–13.) Petitioner waived staff assistance and witnesses, offered no documents, and admitted "[i]t was mine." (Doc. # 11-2 at 3, 10–11.) The DHO relied on the staff eyewitness account, incident report, chain-of-custody photographs, and Petitioner's admission to find him guilty. (Doc. # 11-2 at 3–4, 10–12.) Sanctions included forfeiture of 41 days GCT. (Doc. # 11-2 at 12.) The DHO report, dated April 25, 2024, was delivered to Petitioner on May 2, 2024. (Doc. # 11-2 at 13; Doc. # 1 at 2.)

**Second Disciplinary Incident (Incident Report # 4060221).** On January 27, 2025, at FPC Montgomery, staff observed Petitioner holding a cell phone, and he was again charged with "Possession of a Hazardous Tool, Code 108." (Doc. # 11-3 at 3.) He received the incident report the same day, and a hearing was held on February 6, 2025, before DHO Ronald Gillard. (Doc. # 11-3 at 3, 11.) Petitioner waived staff assistance and witnesses, offered no documents, and stated, "I have no statement concerning a cell phone." (Doc. # 11-3 at 3, 11–12.)

Finding Petitioner guilty, the DHO relied on the reporting officer's eyewitness account, chain-of-custody photographs, and the information in the incident report. (Doc. # 11-3 at 3–4, 12–13.) Sanctions included forfeiture of 41 days GCT. (Doc. # 11-3 at 13.) The DHO report, dated February 11, 2025, was delivered to Petitioner on June 11, 2025. (Doc. # 11-3 at 14; Doc. # 1 at 2.)

**Third Disciplinary Incident (Incident Report # 4100427).** On April 14, 2025, a cell phone was found magnetized to the back of Petitioner's locker in his cell at FPC Montgomery. He again was charged with "Possession of a Hazardous Tool, Code 108." (Doc. # 11-3 at 4–5.)

Petitioner received the incident report on April 14, 2025, and a hearing occurred on April 22, 2025, before DHO Gillard. (Doc. # 11-3 at 4, 16.) He waived staff assistance, requested three inmate witnesses, offered no documents, and admitted "I'm guilty of having the cell phone." (Doc. # 11-3 at 4, 16–17.) The witnesses provided statements that another inmate confessed to ownership of the phone, but the DHO credited the incident report and Petitioner's admission of guilt during the hearing. (Doc. # 11-3 at 4–5, 17–18.) Sanctions included forfeiture of 41 days GCT. (Doc. # 11-3 at 19.) The DHO report, dated May 1, 2025, was delivered to Petitioner on June 11, 2025. (Doc. # 11-3 at 19; Doc. # 1 at 2.)

## B. Petitioner's Claims

In light of these disciplinary outcomes, Petitioner brings three claims. In Claim One, Petitioner alleges that the BOP exceeded its authority under 18 U.S.C. § 3624(b) by forfeiting 123 days of his GCT in a "single annual earning cycle," an amount he contends exceeds the maximum GCT the statute permits an inmate to earn in a year. (Doc. # 1 at 3.) He contends that this over-forfeiture has unlawfully extended his sentence. (Doc. # 1 at 3.)

In Claim Two, he alleges that the BOP violated its policies and regulations by delaying delivery of the DHO reports. He asserts that Program Statement 5270.09 titled, "Inmate Discipline Program," requires DHO reports to be provided within 15 work days, yet the second and third DHO reports were delivered approximately 125 days and 50 days after the hearings. He claims that these delays were "extreme, unreasonable, and prejudicial," violated Program Statement 5270.09 and 28 C.F.R. § 541.8(h), hindered his ability to pursue administrative remedies, and adversely affected his eligibility for placement in a residential reentry center (RRC) and for home confinement. (Doc. # 1 at 3–4.)

In Claim Three, Petitioner alleges a Fifth Amendment due process violation. He contends that delays in receiving the DHO's written findings deprived him of a meaningful opportunity to appeal and of the procedural protections required before the forfeiture of GCT, in violation of due process under *Wolff v. McDonnell*, 418 U.S. 539 (1974). (Doc. # 1 at 3–4.)

As relief, Petitioner requests the court to (1) make findings that the "disciplinary proceedings violated federal law and constitutional due process"; (2) restore all 123 GCT days and expunge Incident Reports 4060221 and 4100427; and (3) order the BOP to immediately recalculate his release date, RRC eligibility, and home confinement eligibility, and for any further just relief. (Doc. # 1 at 4.)

In response to the § 2241 petition, Respondent asserts that Petitioner failed to exhaust administrative remedies as to the two later incidents and, in any event, that none of the three disciplinary proceedings violated due process. (Doc. # 11.)

## IV. DISCUSSION

A review of the record demonstrates that Petitioner was afforded due process in each of the three disciplinary proceedings at issue. For this reason, only the merits of Petitioner's due process claims will be addressed, and the exhaustion defense will not be reached.[4] The analysis proceeds in two parts: first, it summarizes the procedural due process protections required when a prison disciplinary hearing may result in the loss of GCT; and second, it applies those principles to Petitioner's specific claims and arguments.

### A. **The Procedural Due Process Protections Required when a Prison Disciplinary Hearing May Result in the Loss of GCT**

Petitioner, as a federal inmate, has a liberty interest in the GCT he has earned. *See Dean-Mitchell v. Reese*, 837 F.3d 1107, 1112 (11th Cir. 2016) (recognizing that a federal prisoner has a protected liberty interest in statutory good-time credits already earned, in the context of a D.C. offender incarcerated in a federal prison who faced loss of such credits following a disciplinary hearing). "Where a prisoner has

[4] Exhaustion of administrative remedies is not a jurisdictional prerequisite to relief under 28 U.S.C. § 2241. *Santiago-Lugo v. Warden*, 785 F.3d 467, 475 (11th Cir. 2015). For this reason, even where the respondent properly raises exhaustion, the court may "skip over" that defense "if it is easier to deny (not grant, of course, but deny) the petition on the merits without reaching the exhaustion question." *Id.* That judicial discretion is exercised here.

a liberty interest in good time credits, the loss of such credits threatens his prospective freedom from confinement by extending the length of imprisonment." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985). Therefore, "the inmate has a strong interest in assuring that the loss of good time credits is not imposed arbitrarily." *Id.*

> Where a prison disciplinary hearing may result in the loss of good time credits, . . . the inmate must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.

*Id.* (citing *Wolff v. McDonnell*, 418 U.S. 539, 563–67 (1974)).

In *Hill*, the Supreme Court clarified that "revocation of good time does not comport with the minimum requirements of procedural due process, unless the findings of the prison disciplinary board are supported by some evidence in the record." *Id.* (internal quotation marks and citation omitted). "Requiring a modicum of evidence to support a decision to revoke good time credits will help to prevent arbitrary deprivations without threatening institutional interests or imposing undue administrative burdens." *Id.* at 455. The Court further expounded on its some-evidence holding as follows:

> We hold that the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits. This standard is met if "there was some evidence from which the conclusion of the administrative tribunal

> could be deduced. . . ." Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board. We decline to adopt a more stringent evidentiary standard as a constitutional requirement. Prison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances. The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact.

*Id.* at 455–56 (citations omitted). In a § 2241 habeas proceeding, whether "some evidence" supports a prison disciplinary decision revoking a prisoner's good-time credits presents a question of law. *Kapordelis v. Myers*, 16 F.4th 1195, 1199 (5th Cir. 2021).

**B. <u>Application of the Procedural Due Process Principles to Petitioner's Specific Claims and Arguments</u>**

***1. Advance Written Notice of the Disciplinary Charges***

Petitioner received advance written notice of each charge when he was served with the incident report: on April 20, 2024 (first infraction); on January 27, 2025 (second infraction); and on April 14, 2025 (third infraction). (Doc. # 11-2 at 3, 10; Doc. # 11-3 at 3, 11; Doc. # 11-3 at 4, 16.) His DHO hearings were held on April 25, 2024, February 6, 2025, and April 22, 2025, respectively. (Doc. # 11-2 at 3, 10; Doc. # 11-3 at 3, 11; Doc. # 11-3 at 4, 16.) On these undisputed facts, Petitioner's

due process right to advance written notice was satisfied, and he does not allege otherwise.

**2. *Opportunity to Call Witnesses and Present Documentary Evidence***

Petitioner received the opportunity to call witnesses and present documentary evidence in each of the three disciplinary proceedings. He waived the right to call witnesses at the DHO hearings for the first two infractions but requested and presented witnesses at the DHO hearing for the third infraction. He did not request or submit documentary evidence at any hearing. (Doc. # 11-2 at 3; Doc. # 11-3 at 3, 4.) Accordingly, Petitioner received the process due with respect to the opportunity to present witnesses and documentary evidence, and he does not allege otherwise.

**3. *The* Hill *Requirement that Disciplinary Findings Must Be Supported by "Some Evidence"***

Following each hearing, the DHO found that Petitioner committed the charged misconduct. (Doc. # 11-2 at 3, 11; Doc. # 11-3 at 3, 11; Doc. # 11-3 at 4, 16.) Reaching those determinations, the DHOs relied on the reporting staff's eyewitness accounts. According to those accounts, during routine searches, a cellular phone was discovered in Petitioner's cell on two occasions, and on the third occasion, Petitioner was observed holding a cellular phone and surrendered it upon demand. The DHOs also relied on the incident reports and supporting materials, including chain-of-custody photographs, as well as Petitioner's admissions of guilt as to the

first and third infractions. (Doc. # 11-2 at 3–4; Doc. # 11-3 at 3–4, 12–13; Doc. # 11-3 at 4–5, 18.)

Because revocation of GCT need only be supported by "some evidence," *Hill*, 472 U.S. at 454, the record here more than suffices. The DHOs' findings will not be disturbed.

**4. *Written Statement of the Evidence and Reasons for the Disciplinary Action; Timeliness of Petitioner's Receipt of the DHOs' Written Findings***

Petitioner admits he received written DHO reports explaining the evidence relied upon and the reasons for the sanctions imposed. However, he complains that he did not receive the DHO report for the second disciplinary incident until approximately 125 days after the hearing and that he did not receive the DHO report for the third incident until approximately 50 days after the hearing. (Doc. # 1 at 3–4.) He asserts that these delays hindered his ability to pursue administrative remedies (Doc. # 1 at 3–4), but Respondent argues that Petitioner has not shown resulting prejudice (Doc. # 11 at 13–14). Respondent has the better argument.

District courts considering habeas claims relating to the late receipt of DHO reports have concluded that "a delayed delivery of a disciplinary report to an inmate, without more, does not provide a basis for federal habeas relief." *Nicholson v. Carter*, 2024 WL 895120, at *4 (D. Md. Feb. 29, 2024) (internal quotation marks omitted) (collecting cases). This finding across district courts rests, in part, on the

principle that "[i]t is not the mere fact of the government's delay that violates due process, but rather the prejudice resulting from such delay." *Id.* (citation and internal quotation marks omitted); *see also Griffin v. Ebbert*, 640 F. App'x 181, 184 (3d Cir. 2016) (per curiam) (finding no due process violation where the petitioner did not receive a disciplinary report for 18 months because the petitioner did not demonstrate any prejudice as a result of the delay and had received the process he was due under *Wolff*).

Here, Petitioner ultimately received the DHO reports for each infraction and has not shown prejudice from any delay. Although Petitioner contends that the delays in receipt of two of the DHO reports impeded his ability to pursue administrative remedies, the undisputed record shows otherwise. After receiving these DHO reports, Petitioner filed administrative remedies, and none was rejected as untimely. Rather, administrative remedy no. 1277250-R1 was rejected because Petitioner used the incorrect form and attempted to submit it as "sensitive." (Doc. # 11-1 ¶ 11.) He was advised of these deficiencies and instructed how to correct and resubmit the form, but he did not do so. (Doc. # 11-1 ¶ 11.) Also, administrative remedy no. 1201954-F1 was rejected because Petitioner improperly filed at the BP-9 level, and he did not attempt to resubmit this administrative remedy again at any level. (Doc. # 11-1 ¶ 10.)

On this record, Petitioner has not shown that the delay in receiving two of the DHO reports prejudiced his ability to seek administrative recourse. He received all the process due under *Wolff v. McDonnell*, *see* 418 U.S. 539, 563–67 (1974), and any delay in receiving the DHO reports did not rise to the level of a due process violation.

### 5. *BOP's Alleged Noncompliance with 18 U.S.C. § 3624(b) and its Own Policy and Regulation*

Petitioner alleges that the BOP violated 18 U.S.C. § 3624(b) and failed to comply with its own policy and regulation. (Doc. # 1 at 3.) Respondent argues that these allegations do not provide a basis for habeas relief under 28 U.S.C. § 2241. (Doc. # 11 at 14–17.) These allegations are addressed in turn.

First, Petitioner contends that the BOP exceeded its authority by forfeiting more GCT for his disciplinary infractions than he believes 18 U.S.C. § 3624(b) permits. (Doc. # 1 at 3.) Resolving that contention requires interpreting both § 3624(b) and Program Statement 5270.09. Under 18 U.S.C. § 3624(b)(1), a federal prisoner serving a term of more than one year may earn up to 54 days of GCT for each year of the sentence imposed based on "exemplary compliance with institutional disciplinary regulations." Program Statement 5270.09 governs the forfeiture of GCT for Greatest Severity Level prohibited acts (Level 100 offenses). (*See* Doc. # 11-4.) It authorizes forfeiture and/or withholding of earned GCT or non-vested GCT "up to 100%." (Doc. # 11-4 at 47.) Petitioner was found to have

committed three Level 100 offenses, for which forfeiture of up to 100% of vested or non-vested GCT is authorized. (*See* Doc. # 11-4 at 47.) The sanction imposed for each of his infractions (*i.e.*, 41 days per infraction) fell within those limits.

Petitioner argues that any forfeiture of GCT is capped at the amount he could earn in a single year under § 3624(b). (Doc. # 1 at 3.) Neither Program Statement 5270.09 nor § 3624(b) imposes that limitation. Program Statement 5270.09 does not tether the permissible forfeiture of GCT to a one-year accrual cap. And § 3624(b) addresses how GCT may be earned and does not contain any provision restricting the BOP's ability to forfeit previously accrued GCT based on disciplinary misconduct. As the district court in *Garcia v. Warden, FCI Danbury* explained, GCT accrues over the course of a federal prisoner's sentence, so the pool of GCT credits available to forfeit grows as GCT credits are earned. *See* 2025 WL 1927909, at *6 (D. Conn. July 14, 2025). Thus, a prisoner "who has accumulated two or more years of GCT credits" could "lose more than 54 days' GCT credits after committing multiple prohibited acts." *Id.* Petitioner, therefore, cannot show that the BOP exceeded its statutory authority in imposing the GCT forfeitures.

Second, Petitioner alleges that the BOP violated its own policy and regulation, and thereby his due process rights, by delaying delivery of the statutorily required written disciplinary decisions beyond the timeframe contemplated by Program Statement 5270.09. (Doc. # 1 at 3.) Program Statement 5270.09 provides that the

DHO will "give[] the inmate a written copy of the decisions and disposition, ordinarily within 15 workdays of the decision." (Doc. # 11-4 at 36.) While it is undisputed that the BOP failed to provide two of the DHO reports within the 15-workday timeframe contemplated by Program Statement 5270.09, Petitioner identifies no authority indicating that such a timing lapse, standing alone, amounts to a due process violation. Persuasive authority is to the contrary. *See Brand v. Warden, FCI Florence*, 2026 U.S. Dist. LEXIS 40914, at *23 (D.S.C. Jan. 23, 2026) (rejecting a due process claim premised on the alleged noncompliance with BOP timing policy for setting a disciplinary hearing because "even if prison staff had violated BOP policy, a violation of BOP policies and procedures does not support a due process violation" (collecting cases)), *R&R adopted*, 2026 U.S. Dist. LEXIS 39733 (D.S.C. Feb. 26, 2026). Additionally, while the Code of Federal Regulations specifies the information the DHO's written report must contain, it does not set forth any provision that prescribes a deadline for providing it. *See* 28 C.F.R. § 541.8(h).

## V. CONCLUSION

Petitioner has not alleged any due process violation arising from the disciplinary proceedings that resulted in the forfeiture of his good-conduct time. Accordingly, it is ORDERED that the petition for a writ of habeas corpus under 28 U.S.C. § 2241 is DISMISSED with prejudice.

It is further ORDERED that the Clerk of Court shall update the electronic docket sheet to substitute Ray Coleman as the Respondent.

Final judgment will be entered separately.

DONE this 3rd day of September, 2026.

/s/ W. Keith Watkins
UNITED STATES DISTRICT JUDGE